# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TOMMY FUENTEZ, | ) | 1:02-CV-05948 LJO HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS |
| v. | ) | [Doc. #1] |
| | ) | |
| FRED BROWN, | ) | ORDER DIRECTING CLERK OF COURT |
| | ) | TO ENTER JUDGMENT |
| Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on remand from the Ninth Circuit Court of Appeals. The parties having voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), by order dated April 10, 2003, this case was assigned to the Magistrate Judge for all purposes, including entry of final judgment.

On October 8, 2004, the undersigned issued an order denying the petition wherein Grounds One, Two, and Six were dismissed as procedurally defaulted.[1] On August 7, 2006, the Ninth Circuit, *inter alia*, affirmed the dismissal of Grounds One and Two, but reversed and remanded the matter to

---

[1] The procedural history of this case was fully discussed in the Court's order of October 8, 2004, and so will not be repeated here.

the District Court for consideration of Ground Six.

## FACTUAL BACKGROUND

The facts, as set forth by the parties in their briefs before the Court, were summarized in the probation officer's report and opinion of the 5th DCA:

> Records of the Porterville Police Department indicate that on November 1, 1995, officers were investigating a series of robberies. The investigation led officers to the residence of Tammy Avalos. As they passed the front of the residence in an unmarked vehicle, officers observed several subjects standing in the front of the residence, displaying gang signals. The officers drove around the block and requested assistance from a marked patrol unit. As the units moved in, an officer observed a subject pull a handgun out from around the area of his waist. Officers exited their vehicles and identified themselves. The subjects fled the area. An officer saw one of them toss a handgun on to the roof. The handgun slid off the roof into the backyard of an apartment complex. Officers detained two of the subjects and placed them into custody. They asked one of the subjects, Victoria Moisa, who was inside the residence. She reported that it was her residence and only her grandsons and her daughter were inside. She consented to a search of the residence.
>
> Officers found [Petitioner] and Paul Carraballo, inside the residence. Both Carraballo and [Petitioner] were taken into custody.
>
> During the search, officers discovered several vehicles in the backyard. Various rounds of ammunition, two assault rifles, a box of "tire blow out spikes," cable ties, dark clothing, and gloves were found near the vehicles. Officers questioned Tammy Avalos and Paul Carraballo, who stated that Avalos had already reported her vehicle stolen because she knew it was going to be used in a robbery. The officer reported that the entire group was going to do a "take over" robbery of Smith's Market.
>
> Officers then contacted [Petitioner]. Upon questioning, [Petitioner] stated, "All I have to say is I was at the residence. It appeared to be at the wrong place at the wrong time, and I really don't have much else to say." Officers informed [Petitioner] they needed to talk to him about several carjackings and bank robberies. [Petitioner] did not make any comments to officers at the time.
>
> On April 14, 1997, [Petitioner] entered a plea in this matter. During the change of plea proceedings, the trial court agreed to consider striking one or more of [Petitioner's] prior convictions if [Petitioner], a gang member, provided useful information regarding his gang's illegal activities.
>
> [Petitioner's] sentencing in the instant matter was delayed because he was facing trial on several charges in Fresno County which resulted from his involvement in a carjacking on October 16, 1995, and his possession of a handgun during a traffic stop on October 20, 1995. On July 28, 1999, [Petitioner] was convicted of carjacking with a gun-use enhancement and two counts of possession of a firearm by a felon. Additionally, after his conviction on that date, [Petitioner] managed to escape for a short time before he was recaptured. This resulted in his subsequent conviction for escape. On February 19, 1999, [Petitioner] was sentenced to an aggregate term of 67 years on his carjacking and possession of a firearm convictions. On February 22, 1999, [Petitioner] was sentenced to a concurrent three-year term on his escape conviction.
>
> On April 19, 1999, at [Petitioner's] sentencing hearing in the instant matter, [Petitioner] moved to have the court strike one or more of his prior convictions based on his

cooperation with authorities in providing them information. In support of the motion, the defense called Ruben Roman, a member of the Special Services Unit of the California Department of Corrections, to testify. Roman testified that he interviewed [Petitioner] on September 30, 1998, along with Classification Officer Jim Aguirre, Detective Bill Gonzales from the San Jose Police Department, and Detective Greg Andriotti from the Fresno County Sheriffs Department. The meeting was held at [Petitioner's] request to see if [Petitioner] would be able to help law enforcement deal with issues involving the Northern Structure Prison Gang. According to Roman, [Petitioner] gave them information regarding two homicides and some robberies and information about gang members' activities outside the prison. However, the information was not useful because it was old information dating back to 1995 when [Petitioner] was out of custody. [Petitioner] also gave Roman two or three pieces of paperwork from other gang members and he relayed information he had been told regarding the structure of the gang at Pelican Bay. At the conclusion of his testimony Roman agreed with the court when it stated:

> It seems to me quite clear that he tried to give you information, but the information was not helpful.

Defense counsel then stated:

> "Well, your honor, I'd like an opportunity to present to this Court the detective from Fresno County who could discuss in more detail what the particular information was and how it related to these various homicides and crime."

The court denied the request for a continuance and the motion to strike. It then resentenced [Petitioner] to an aggregate term of 65 years to life in the Fresno case and a consecutive 25 years to life on the instant case.

See pp. 2-3, Exhibit A, Answer; see pp. 2-3, Exhibit D, Answer.

## DISCUSSION

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114

1  F.3d 1484, 1499 (9th Cir. 1997), *quoting*, Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert.*
2  *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997)
3  (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was
4  filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 71 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 71; see Williams v. Taylor, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting,* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting,* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting,* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of

materially indistinguishable facts." Williams v. Taylor, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002).

**III.  Review of Petitioner's Claim**

    **A.  Ineffective assistance of counsel - Ground Six**

Petitioner claims his defense counsel was ineffective for several reasons. First, he claims counsel led him to believe a "deal" would be reached with the government, but he alleges the "deal" did not transpire. The deal Petitioner refers to was a plea agreement reached with the People whereby Petitioner agreed to plead no contest and forego trial. He was to cooperate with law enforcement by providing helpful information to the government. In exchange for his cooperation in providing helpful information, the court would consider striking one or both of his priors.

Second, Petitioner alleges counsel failed to exercise due diligence in investigating and

securing witnesses favorable to the defense. He further alleges counsel did not return his phone calls and "abandoned" him while he was relocated during the time he cooperated with law enforcement, and claims counsel did not confer with him and investigate until three days prior to trial. Thus, he alleges the result would have been different if counsel would have fully investigated the case and subpoenaed all witnesses.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since the defendant must affirmatively prove prejudice, any

deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. See Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25 (1984). Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

### 1. Failure to secure a plea bargain

In order to demonstrate ineffective assistance of counsel in the context of a guilty plea, a petitioner must show that (1) his counsel failed to provide reasonable competent advice, and that (2) there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366 (1985).

As stated above, a plea bargain was reached with the government whereby Petitioner agreed to plead no contest and provide useful information regarding his gang's activities. Provided Petitioner cooperated and came forth with helpful and relevant information, the court would consider striking one or both of his priors. As it stood, if Petitioner went to trial and was found guilty, he faced a sentence of 25 years to life under California Three Strikes law. If the court were to strike one or both priors, Petitioner's possible sentence for the instant convictions would have been less. Unfortunately, Petitioner's cooperation did not prove helpful according to law enforcement and the Court did not strike Petitioner's priors.

Regardless of the failed plea bargain, Petitioner has not demonstrated counsel's assistance in the context of the guilty plea to be ineffective. Counsel reasonably advised Petitioner to take the plea bargain on the chance that one or both priors would be stricken. It was not counsel's fault that Petitioner's information proved to be dated and useless. In addition, Petitioner has failed to demonstrate prejudice. He has not shown the result would have been any different had counsel urged him not to take the plea bargain.

### 2. Failure to investigate and subpoena witnesses

Defense counsel has a "duty to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 691, 104 S.Ct. 2052. This includes a duty to investigate the defendant's "most important defense," <u>Sanders v. Ratelle</u>, 21 F.3d at 1446, 1457 (9th Cir. 1994), and a duty adequately to investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict. <u>Hart v. Gomez</u>, 174 F.3d 1067, 1070 (9th Cir.1999). However, "the duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed." <u>Hendricks v. Calderon</u>, 70 F.3d 1032, 1040 (9th Cir.1995) (citations and quotations omitted). "A claim of failure to interview a witness ... cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." <u>Eggleston v. United States</u>, 798 F.2d 374, 376 (9th Cir.1986) (citations and quotations omitted). In presenting a claim of ineffective assistance based on counsel's failure to call witnesses, Petitioner must identify the witness, <u>U.S. v. Murray</u>, 751 F.2d 1528, 1535 (9th Cir. 1985), show that the witness was willing to testify, <u>U.S. v. Harden</u>, 846 F.2d 1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony would have been sufficient to create a reasonable doubt as to guilt. <u>Tinsley v. Borg</u>, 895 F.2d 520, 532 (9th Cir. 1990); <u>see</u> <u>also</u> <u>United States v. Berry</u>, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant did not indicate what witness would have testified to and how such testimony would have changed the outcome of the trial, there can be no ineffective assistance of counsel). When the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery she or he now claims was necessary, an ineffective assistance claim fails. <u>Eggleston</u>, 798 F.2d at 376. Furthermore, "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." <u>Id</u>. The absence of affidavits from uncalled witnesses puts a petitioner's claim at a disadvantage. <u>Howard v. O'Sullivan</u>, 185 F.3d 721, 724 (7th Cir. 1999) ("failure to submit supporting affidavits from [the] potential witnesses would severely hobble [the petitioner's] case.")

  Petitioner claims counsel was ineffective in failing to investigate and call "all" witnesses. In his petition, he does not specify which witnesses were not called, he does not show these unnamed witnesses were willing to testify, and he fails to state what these witnesses would have testified to,

let alone demonstrate that their testimony would have been sufficient to create a reasonable doubt as to guilt. In his traverse, he argues that Detective Andriotti would have testified that he provided useful information. However, he does not show that Andriotti was willing to testify, and he does not shed light on what helpful information he provided to Andriotti that would have altered the trial court's perception that he had not provided useful information. Surely, being that Petitioner was the individual who provided the information to Andriotti, he could submit to the Court what it was that he informed Andriotti. Or, he could have submitted declarations from Andriotti or the other unnamed witnesses, but he has failed to do so. Moreover, Detective Roman testified at trial that Petitioner did not provide anything useful, and he was present along with Andriotti and several other members of law enforcement when Petitioner provided his information. Petitioner makes no showing how Andriotti's account would have been any different from Roman's.

Likewise, his claim that counsel failed to confer and investigate until three days prior to trial fails for the same reasons. He does not show what counsel would have uncovered had he investigated further, and he does not show how the unidentified evidence would have altered the outcome of the trial.

Based on the foregoing, the state court rejection of Petitioner's claim was not contrary to or an unreasonable application of <u>Strickland. v. Washington</u>. <u>See</u> 28 U.S.C. § 2254(d). The claim must be denied.

### ORDER

Accordingly, the Court hereby ORDERS that the petition for writ of habeas corpus is DENIED with prejudice, and the Clerk of the Court is DIRECTED to enter judgment for Respondent.

IT IS SO ORDERED.

**Dated:   October 21, 2006**              /s/ Lawrence J. O'Neill
b9ed48                                UNITED STATES MAGISTRATE JUDGE