# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

TOMMY FUENTEZ,
aka TOMMY FUENTES,

            Petitioner,

   v.

FRED BROWN, Warden,

            Respondent.

1:02-CV-05948 GSA HC

ORDER DENYING PETITION FOR WRIT
OF HABEAS CORPUS

ORDER DIRECTING CLERK OF COURT
TO ENTER JUDGMENT

ORDER DECLINING ISSUANCE OF
CERTIFICATE OF APPEALABILITY

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on remand from the Ninth Circuit Court of Appeals.  Petitioner is represented in this matter by Barry L. Morris, Esq.  Respondent is represented in this matter by Melissa J. Lipon, Esq., of the Office of the California Attorney General. The parties have voluntarily consented to have a magistrate judge conduct any and all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1).

On December 26, 2007, the Ninth Circuit Court of Appeals reversed the judgment of the Court and remanded the matter for further factual development of Petitioner's ineffective assistance of counsel claim in order to determine whether Petitioner's counsel's performance was deficient, and if so, whether the deficient performance prejudiced Petitioner.

Following remand from the Ninth Circuit, the Court and the parties began the task of developing the relevant facts. Discovery was conducted and depositions were taken. On April 20, 2010, Respondent filed an opening brief. On April 26, 2010, Petitioner filed his opening brief. On May 18-21, 2010, an evidentiary hearing was held. Respondent filed a final brief on July 26, 2010, and Petitioner filed his on July 27, 2010. On August 10, 2010, Respondent filed a reply to Petitioner's brief, and on August 20, 2010, Petitioner filed a surreply. Final arguments were heard on September 3, 2010.

## FACTUAL BACKGROUND

### I.  Facts of the Plea Agreement as Determined by the Appellate Court

On direct appeal, the appellate court made factual findings with respect to other claims not presented in the instant petition. The Court must consider these facts. As Respondent correctly argues, the Court must presume the correctness of a factual issue determined by a state court, absent clear and convincing evidence. See Pirtle v. Morgan, 313 F.3d 1160, 1168 (9th Cir. 2002), citing, Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001); 28 U.S.C. § 2254(e)(1). The facts as determined on direct appeal are as follows:

On April 14, 1997, [Petitioner] entered a plea in this matter. During the change of plea proceedings, the trial court agreed to consider striking one or more of [Petitioner's] prior convictions if [Petitioner], a gang member, provided useful information regarding his gang's illegal activities.

[Petitioner's] sentencing in the instant matter was delayed because he was facing trial on several charges in Fresno County which resulted from his involvement in a carjacking on October 16, 1995, and his possession of a handgun during a traffic stop on October 20, 1995. On July 28, 1999, [Petitioner] was convicted of carjacking with a gun-use enhancement and two counts of possession of a firearm by a felon. Additionally, after his conviction on that date, [Petitioner] managed to escape for a short time before he was recaptured. This resulted in his subsequent conviction for escape. On February 19, 1999, [Petitioner] was sentenced to an aggregate term of 67 years on his carjacking and possession of a firearm convictions. On February 22, 1999, [Petitioner] was sentenced to a concurrent three-year term on his escape conviction.

On April 19, 1999, at [Petitioner's] sentencing hearing in the instant matter, [Petitioner] moved to have the court strike one or more of his prior convictions based on his cooperation with authorities in providing them information. In support of the motion, the defense called Ruben Roman, a member of the Special Services Unit of the California Department of Corrections, to testify. Roman testified that he interviewed [Petitioner] on September 30, 1998, along with Classification Officer Jim Aguirre, Detective Bill Gonzales from the San Jose Police Department, and Detective Greg Andriotti from the Fresno County Sheriffs Department. The meeting was held at [Petitioner's] request to see if [Petitioner] would be able to help law enforcement deal with issues involving the Northern Structure

Prison Gang. According to Roman, [Petitioner] gave them information regarding two homicides and some robberies and information about gang members' activities outside the prison. However, the information was not useful because it was old information dating back to 1995 when [Petitioner] was out of custody. [Petitioner] also gave Roman two or three pieces of paperwork from other gang members and he relayed information he had been told regarding the structure of the gang at Pelican Bay. At the conclusion of his testimony Roman agreed with the court when it stated:

> It seems to me quite clear that he tried to give you information, but the information was not helpful.

Defense counsel then stated:

> "Well, your honor, I'd like an opportunity to present to this Court the detective from Fresno County who could discuss in more detail what the particular information was and how it related to these various homicides and crime."

The court denied the request for a continuance and the motion to strike. It then resentenced [Petitioner] to an aggregate term of 65 years to life in the Fresno case and a consecutive 25 years to life on the instant case.

## II.  Facts of the Plea Agreement Following Evidentiary Hearing

In the case at bar, the state courts did not rule on the merits of Petitioner's claim. In such a case, the Court must review legal issues de novo and factual issues for clear error. Fuentez v. Brown, 256 Fed.Appx. 966, 967 (2007), *citing* Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir.2002); see also Pirtle, 313 F.3d at 1167-68.  With this standard in mind, the Court sets forth the following findings of fact.

### *A.  Plea Agreement*

On or about January of 1997, Petitioner was facing charges of conspiracy to commit robbery and misdemeanor possession of a firearm by a felon in Tulare County Superior Court.  The Office of the Public Defender was appointed, and Arthur E. Hampar, Esq., (hereinafter "Counsel") was assigned the case. (HT[1] 1-38.) Counsel met with Petitioner several times between January of 1997 and the date of trial, April 14, 1997, and discussed Petitioner's expressed desire to cooperate with law enforcement and the possibility of doing so in an effort to have his [strike[2]] priors stricken. (HT 42, 415-416.) On April 7, 1997, Petitioner and Counsel met with law enforcement at the Bob Wiley

---

[1] "HT" refers to the transcript of the evidentiary hearing held before the undersigned.

[2] Under California's "Three Strikes Law," see Cal. Penal Code § 667(b), a recidivist receives a greatly enhanced sentence if qualifying prior convictions are proved. See Ewing v. California, 538 U.S. 11, 16 (2003).

Detention Center to discuss the possibility of Petitioner's cooperation. (HT 42, 67; SRT[3] 2.)

Counsel recalled having assisted in setting up the meeting. (HT 213.)   Representatives from

different law enforcement agencies were there, including: FBI Agent Ron Eowan, ATF Agent

Colleen Eowan, and District Attorney Investigator Wayne Spencer. (HT 214.)  The agents appeared

to be very interested. (HT 216.)  In light of this development, Counsel sought a continuance of his

trial but it was denied. (HT 219.)  At that point, Petitioner's choices were either to proceed to trial or

make a deal. (HT 219.)  Counsel viewed Petitioner's trial prospects as slim.  According to Counsel,

since the circumstantial evidence of Petitioner's involvement in the crimes was very strong, if

Petitioner testified at his trial, he would not be able to explain away his involvement without

appearing to lie. (HT 200-206, 219.)  Doing so would likely result in Petitioner causing the judge to

disallow any reduction in sentence.  Counsel specifically recalled that Judge Broadman had stated

that if Petitioner lied, any deal would be off. (HT 201, 223.)   In addition, the district attorney

intended to introduce substantial evidence of uncharged offenses involving Petitioner. (HT 255-56.)

Therefore, Petitioner's options were limited. (HT 221.)

On April 14, 1997, the date set for trial, a hearing was held before Judge Howard Broadman

in the Tulare County Superior Court. (SRT 1-5.)  Prior to entry of plea, Counsel requested an in-

chambers meeting with Judge Broadman to discuss Petitioner's desire to change his plea and

cooperate with law enforcement.  (HT 44-45.)  Counsel requested the hearing be private because of

the sensitive nature of Petitioner's offer, e.g., to be an informant and the fact that co-defendants were

involved. (SRT 1; HT 44-45, 305-306.)  Counsel and Petitioner met with Judge Broadman in either

the judge's chambers or the jury room.  (HT 44-45.)  At that meeting, Judge Broadman agreed to

consider dismissing the strike priors if Petitioner cooperated with law enforcement and provided

"useful information"[4], "[made] a clean breast of things", went "in a new direction", and "turn[ed] his

---

[3]"SRT" refers to the sealed transcript of the April 14, 1997, plea hearing in Tulare County Superior Court before Judge Broadman.

[4]From the evidence adduced at the evidentiary hearing, it could not be determined whether the plea agreement depended on Petitioner's mere cooperation with law enforcement or if Petitioner's information had to be "useful" to law enforcement in some manner.  Nevertheless, the appellate court determined in its factual statement on direct appeal that "the trial court agreed to consider striking one or more of appellant's prior convictions if appellant, a gang member, *provided useful information* regarding his gang's illegal activities." (emphasis added.) As Petitioner has not provided  evidence to the

1  life around." (HT 57-59, 83-86, 226, 307-308; Resp't's Ex. G at 273-274.)  The judge stated he

2  would give fair consideration to what Petitioner did. (HT 57, 226.)

3        As a result, Petitioner pled no contest to charges of conspiracy to commit robbery and

4  misdemeanor possession of a firearm by a felon. He also admitted to having been previously

5  convicted of two serious and/or violent felonies within the meaning of California's Three Strikes

6  Law. (RT[5] 475-476.)  After the plea, Counsel attempted to memorialize what transpired during the

7  off-the-record conversation by recording "in a sealed portion of the transcript what [the court is]

8  considering doing in this case." (RT 477.) Judge Broadman rejected Counsel's suggestion, stating:

9        I have either already told - - said that on a sealed thing or we've talked informally. But I have
       not promised him anything, and it all depends on what happens. ¶ He understands fully that

10       his life is in my hands, and what is going to - - that's just what the sentencing rules are.

11  (RT 477.)

12  ### *B.  Post-Plea*

13        From the record developed in this matter, it appears that Counsel did not meet with Petitioner

14  from the time he was removed from Tulare County in 1997 until the time he was returned from

15  Fresno County in 1999.  However, Counsel did take limited action on Petitioner's case three or four

16  months after the plea.  Moreover, on July 21, 1997, Counsel made a research request with respect to

17  the plea agreement that had been reached. (HT 229.)  Counsel made this request to find out how to

18  properly effectuate the plea agreement. (HT 230.)  Counsel was concerned about receiving immunity

19  for his client. (HT 230.)  In this regard, in either July or August, he contacted the Federal Defender to

20  discuss the immunity issue. (HT 257.)  At some point, Counsel also contacted Ron Eowan's agency

21  as to Petitioner's cooperation in providing information. (HT 231.)  He learned that Eowan had been

22  transferred and the agency was no longer interested in pursuing the gang information Petitioner

23  reportedly had. (HT 231.)  Counsel concluded that this was a negative development toward the

24  possibility of Petitioner cooperating with law enforcement. (HT 259.)

25        Counsel also contacted Petitioner's Fresno defense attorney, Barry Rekoon, Esq., several

26

27  contrary, the Court must defer to the factual finding of the state court. 28 U.S.C. § 2254(e)(1).

28        [5]"RT" refers to the Reporter's Transcript on Appeal.

1   times in an attempt to benefit Petitioner's Fresno case with regard to Petitioner's cooperation with

2   law enforcement. (HT 259-260, 427.)  Nothing really materialized from these discussions, but

3   Rekoon informed Counsel that any such arrangement must go through Deputy U.S. Attorney Deuce

4   Rice. (HT 261.) Counsel then contacted Rice.  Rice informed Counsel that the Fresno prosecutors

5   were not interested in striking a deal; they wanted to prosecute. (HT 66.)  At some point, Counsel

6   also contacted FBI and ATF agents, Ron Eowan and Colleen Eowan. (HT 67.) Other than the above,

7   Counsel made no effort to determine the extent of Petitioner's cooperation with the various law

8   enforcement agencies until Petitioner was returned to Tulare County upon conclusion of the Fresno

9   case.  For the approximate two years Petitioner was in Fresno, Counsel never contacted or

10  corresponded directly with Petitioner. (HT 69-71.)

11          In March of 1999, Petitioner was returned to Tulare County for sentencing.  On March 31,

12  1999, and April 1, 1999, Counsel met with Petitioner. (HT 15, 19.)  At those meetings, Petitioner

13  informed Counsel that he had recently met with law enforcement for a lengthy debriefing that lasted

14  approximately 3 to 4 hours. (HT 15, 19, 442.)  Apart from that debriefing, Petitioner informed

15  Counsel that he had also communicated with Correctional Officer Jim Aguirre approximately 30 to

16  40 times over the year and provided information regarding prison gangs as well as crimes that had

17  occurred. (HT 274-275, 430.)  Petitioner informed Counsel that the debriefing was led by Ruben

18  Roman and involved other law enforcement officers including an individual by the name of "Greg"

19  from the M.A.G.E.C. Unit. (HT 33.) Petitioner told Counsel that he had provided substantial

20  information regarding serious crimes. (HT 73.)  The debriefing was tape-recorded. (HT 16.)  As a

21  result of Counsel's meeting with Petitioner, Counsel generated an investigative request. (HT 34.)  An

22  investigator was assigned and a subpoena was issued on April 13, 1999, directing Ruben Roman to

23  appear at the sentencing hearing. (HT 77.) A subpoena duces tecum was also issued for the tape

24  recording of the debriefing. (HT 77-78.) However, the subpoena for the tape was issued for the

25  actual date of the hearing; Counsel did not attempt to obtain it in advance of the hearing. (HT 18, 24,

26  78.) Counsel admitted that by subpoenaing the tape for the date of the hearing, he would not have

27  been able to review the tape in advance of the hearing. (HT 30.)  Counsel did not attempt to file a

28  written motion for a continuance in order to give himself time to review the tape in advance of the

hearing. (HT 78.)

Also on April 1, 1999, Petitioner asked Counsel if Judge Broadman could resentence Petitioner on all convictions, including the conviction out of Fresno County.  (See Pet'r's Ex. 6.) Counsel did not recall providing an answer but Counsel did note Petitioner's question. (See Pet'r's Ex. 6.)  Counsel recalled that Petitioner and Judge Broadman had a conversation about striking strikes, but he did not recall a specific reference to the Fresno convictions. (HT 265.)

On or about April 12, 1999, Counsel spoke to his investigator regarding the case.  (See Pet'r's Ex. 1.)  He also received an investigative report from his investigator on or about April 16, 1999. (HT 108; Resp't's Ex. I.) The report referenced four potential witnesses: Correctional Officer Jim Aguirre, Correctional Officer Ruben Roman, San Jose Police Officer William Gonzalez, and Parole Officer Randy Kevorkian. (HT 108.) Although the report revealed Roman's testimony would not be favorable, Counsel called him to testify anyway. (HT 108.) Counsel reasoned that although Roman's testimony would be that Petitioner provided information that was stale and not helpful, Counsel could at least argue to the judge that Petitioner made a good faith attempt to cooperate. (HT 108-109; HT 283.) In addition, Kevorkian explicitly said that Roman had the most to offer of anyone. (HT 108.)  Roman had led the debriefing, and he was the prison representative to whom Petitioner's gang information pertained. (HT 180.) Kevorkian had nothing to offer, Aguirre had little, and the information provided to Gonzalez was not useful. (HT 108, 287, 289, 348.)  In any case, Counsel attempted to speak with Aguirre as well. (HT 108, 347.)

### *C. Sentencing*

On the morning of April 19, 1999, the date of Petitioner's sentencing hearing, Counsel met with Ruben Roman. (HT 344.)  During the conversation, he learned that the person referred to as "Greg" was Lt. Greg Andreotti. (HT 37.) At the sentencing hearing, Counsel made a request for a continuance in order to have Lt. Andreotti provide testimony about Petitioner's cooperation. (HT 79, 81-82.) The continuance was denied. (HT 79.)

Counsel stated he made the best argument he could during sentencing. (HT 96-97.)  Counsel did not want to argue or go into any detail regarding Petitioner's efforts in "turning his life around"

in light of his escape attempt[6] during a time he was supposed to be cooperating with law enforcement. (HT 97, 294-295.)  Counsel opted instead to emphasize Petitioner's cooperation in providing information to law enforcement, and he did so at length. (HT 95-97.)  Counsel did not call Petitioner to testify as to what information he provided. (HT 111-112.)  He did not recall whether he had a tactical reason for not doing so. (HT 112.)  Counsel did make a request of Judge Broadman toward the end of the sentencing hearing to strike the Fresno priors.  (See Pet'r's Ex. 9 at 21.)  Counsel did not recall any legal authority for such a request, but claims he made said request as a last ditch effort and as a way to preserve the argument for the record. (HT 300-302.)

### *D. Additional Facts from Testimony of Lt. Greg Andreotti*

Lt. Greg Andreotti was a gang investigator with the Fresno County Sheriff's Department, assigned to the M.A.G.E.C. team, between the years of 1997 and 1999. (HT 158.)  Andreotti was notified that Petitioner wanted to provide information. (HT 160.) On September 30, 1998, a debriefing initiated by Petitioner took place wherein Petitioner provided information to Andreotti, Gonzalez, and Aguirre; Ruben Roman led the debriefing. (HT 164, 168, 177, 180, 433.)  Andreotti characterized Petitioner's cooperation as willing. (HT 164, 165.) Andreotti testified that a gang member who gives up gang information which is readily known to law enforcement is not helpful to law enforcement; he is therefore not really endangering himself. (HT 166.) However, if a gang member provides information that is critical to the organization and disruptive to their activities, then the gang member would place himself in danger. (HT 166.)  Andreotti stated that the gang information Petitioner provided would have related more to Roman since Roman was the one connected to the prison system. (HT 168.)  Andreotti also stated that Petitioner's information was new to him when he heard it. (HT 169.)  Petitioner's information was specific and self-incriminating. (HT 170.)  He provided information on robberies and murders. (HT 173.)  Andreotti opined that it appeared to him that Petitioner was attempting to debrief and drop out of his gang. (HT 175.)  This

---

[6]On July 28, 1998, after Petitioner had been convicted in his Fresno County case, Petitioner escaped from custody for a short period of time.  Petitioner was pursued across the courthouse lawn by deputies who fired shots and finally captured him. (HT 97-98.)  He was convicted of felony escape in violation of Cal. Penal Code § 4532(b)(1) and given a three year concurrent sentence.  (See Resp't's Ex. K at 296.)  This information was contained in the probation report and was before the judge at sentencing. (See Resp't's Ex. K at 296, 301, 310.)

would have been his testimony if he had been called at the sentencing hearing. (HT 175.)  Andreotti stated he would not have testified that any of Petitioner's information was used in an investigation, conviction or trial. (HT 188-89.)  He also stated he would not have testified that Petitioner's information was helpful to a law enforcement agent. (HT 189.)  He further stated that he would not have testified that Petitioner had a changed character or that he had turned his life around. (HT 189.)

### *E. Additional Facts from Testimony of Officer Ruben Roman*

Ruben Roman was an officer of the California Department of Corrections, Special Services Unit, at the time in question. (HT 512.)  He participated in the debriefing of Petitioner. (HT 516-517.)  He was the organizer and the primary interrogator. (HT 520.)  Based on the information Petitioner provided at the debriefing, Roman was interested to see if the information was useful. (HT 517.)  Roman and other members of law enforcement attempted to verify Petitioner's information. (HT 517-518.)  Roman and the other investigators found out that many of the individuals identified by Petitioner were either in custody at the time they were alleged to have committed crimes or dead. (HT 518-519.)  Based on these findings, Roman and the others determined Petitioner was not credible and so decided not to continue to verify the information. (HT 519.)  However, during the sentencing hearing, Roman testified that the information was not useful as it was stale, but not for the reasons listed above.

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

1   Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114

2   F.3d 1484, 1499 (9th Cir. 1997), *quoting*, Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert.*

3   *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997)

4   (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was

5   filed after the enactment of the AEDPA; thus, it is governed by its provisions.

6   **II.  Legal Standard of Review**

7           Under the AEDPA, an application for habeas corpus will not be granted unless the

8   adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

9   application of, clearly established Federal law, as determined by the Supreme Court of the United

10   States" or "resulted in a decision that was based on an unreasonable determination of the facts in

11   light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

12   538 U.S. at 71; see Williams v. Taylor, 529 U.S. at 413.

13           In a case such as this, where the claims were not adjudicated on the merits in the state courts,[7]

14   the standard of review set forth in § 2254(d) does not apply. Instead, the federal courts apply a

15   different, less stringent standard of review. The court must review legal issues de novo and factual

16   issues for clear error.  Fuentez v. Brown, 256 Fed.Appx. 966, 967 (2007), *citing* Killian v. Poole,

17   282 F.3d 1204, 1208 (9th Cir.2002).  However, the court must still defer to the state court's findings

18   of relevant facts unless Petitioner rebuts those findings by clear and convincing evidence. 28 U.S.C.

19   § 2254(e)(1).

20   **III.  Review of Petitioner's Claims of Ineffective Assistance of Counsel**

21           **A.  Standard**

22           The law governing ineffective assistance of counsel claims is clearly established.  Canales v.

23   Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

24   assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668,

25

26   _____

        [7] Petitioner's ineffective assistance of counsel claims were first raised in a state habeas petition to the superior court.
27   They were denied on procedural grounds and for untimeliness. The same claims were then raised to the appellate court where
     they were denied without comment.  It is presumed the appellate court denied the claims for the same reasons below. Ylst
28   v. Nunnemaker, 501 U.S. 797, 803-04 (1991).  The claims were then raised to the California Supreme Court where they were
     denied again on procedural grounds and untimeliness.

1    687 (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

2    counsel's performance was deficient, requiring a showing that counsel made errors so serious that he

3    or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 466

4    U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard

5    of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of

6    reasonable professional judgment considering the circumstances. <u>Id</u>. at 688; <u>United States v.

7    Quintero-Barraza</u>, 78 F.3d 1344, 1348 (9th Cir. 1995).  Petitioner must show that counsel's errors

8    were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  <u>Strickland</u>, 466

9    U.S. at 688.  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a

10   strong presumption that counsel's conduct falls within the wide range of reasonable professional

11   assistance.  <u>Strickland</u>, 466 U.S. 668, 687 (1984); <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th

12   Cir.1994).

13        Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a

14   reasonable probability that, but for counsel's unprofessional errors, the result ... would have been

15   different," 466 U.S. at 694.  A court need not determine whether counsel's performance was deficient

16   before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

17   <u>Strickland</u>, 466 U.S. 668, 697 (1984).  Since the defendant must affirmatively prove prejudice, any

18   deficiency that does not result in prejudice must necessarily fail.

19        In order to demonstrate ineffective assistance of counsel in the context of a guilty plea, a

20   petitioner must show that (1) his counsel failed to provide reasonable competent advice, and that (2)

21   there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

22   would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985).

23        The court must evaluate whether the entire trial was fundamentally unfair or unreliable

24   because of counsel's ineffectiveness.  <u>Id</u>.; <u>Quintero-Barraza</u>, 78 F.3d at 1345; <u>United States v.

25   Palomba</u>, 31 F.3d 1356, 1461 (9th Cir. 1994).

26        **B.  Review of Claims**

27        ***1.  Subclaim One - Ineffective Assistance in Advisement of Plea***

28        Petitioner first alleges Counsel was ineffective in advising him during the plea bargaining

1  process.  Petitioner contends he was misled to believe, by both Counsel and Judge Broadman, that as

2  the last sentencing judge, Judge Broadman had the power to strike priors both in the Tulare County

3  case as well as in the Fresno County case.  Petitioner claims it was this assurance that was the

4  centerpiece to his decision to enter a plea of guilty.  Respondent argues that the claim is unexhausted

5  and without merit.  As will be discussed below, the Court agrees and finds this claim to be both

6  unexhausted and meritless.

7           ***a. Exhaustion***

8           A petitioner who is in state custody and wishes to collaterally challenge his conviction by a

9  petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  "A

10 thorough description of the operative facts before the highest state court is a necessary prerequisite to

11 satisfaction of the standard . . . that a federal habeas petitioner [must] provide the state courts with a

12 fair opportunity to apply controlling legal precedent to the facts bearing upon his constitutional

13 claim." Kelly v. Small, 315 F.3d 1063, 1069 (9th Cir.2003), *overruled on other grounds by* Robbins

14 v. Carey, 481 F.3d 1143 (9th Cir.2007).  Where a petitioner presents additional facts in his federal

15 petition that do not merely substantiate the legal basis for the claim, but fundamentally alters the

16 claim, the petitioner has failed to exhaust that claim.  Vasquez v. Hillery, 474 U.S. 254, 257-58

17 (1986); Richey v. Bradshaw, 498 F.3d 344, 353 (6th Cir.2007).  Unless expressly waived, a

18 respondent may raise the exhaustion requirement at any time in the proceedings.  28 U.S.C.

19 § 2254(b)(3).

20          In his petition to the California Supreme Court, Petitioner alleged ineffective assistance of

21 trial counsel in his third claim for relief. (See Resp't's Answer Ex. K.)  The claim was based on

22 Counsel's alleged failure to communicate with Petitioner, failure to assist in Petitioner's cooperation

23 with law enforcement, failure to prepare for the sentencing hearing, failure to call witnesses at the

24 hearing, and a failure to secure evidence in the form of an audiotape.  A failure to advise him

25 properly in the plea bargaining stage was not part of the claim presented to the California Supreme

26 Court.  Furthermore, nowhere in the petition did Petitioner state that defense counsel or the judge

27 represented that the judge could and/or would alter the Fresno sentence.

28          This additional subclaim is wholly different from the other subclaims of ineffective

1   assistance.  His other subclaims of ineffective assistance center on Counsel's alleged inaction

2   throughout the case, specifically in the areas of communication, assistance, and preparation.  The

3   additional subclaim now presented centers on Counsel's alleged erroneous advice which in turn

4   allegedly caused Petitioner to enter his plea.  Petitioner's claim that he solely relied on a specific

5   misstatement of law by Counsel for inducement of his plea is materially different from garden

6   variety claims of ineffectiveness such as failure to prepare, failure to assist, and failure to

7   communicate.  While all of these claims fall under the broad umbrella of ineffective assistance of

8   counsel, the new subclaim relies on a completely distinct fact scenario.  The new subclaim

9   fundamentally alters the claim of ineffective assistance; therefore, it is unexhausted because it cannot

10  be said that the state court was given a full and fair opportunity to review it.  Duncan v. Henry, 513

11  U.S. 364, 365 (1995); Lopez v. Schriro, 491 F.3d 1029, 1040 (9th Cir.2007).  As such, it must be

12  dismissed. 28 U.S.C. § 2254(b)(1).  Nevertheless, the claim may be denied on the merits even though

13  unexhausted. 28 U.S.C. § 2254(d)(2).  For the foregoing reasons and for the reasons set forth below,

14  the claim will be denied on both grounds.

15          ***b.  Analysis of Claim***

16          Judge Broadman did have the power to strike Petitioner's prison priors in the Tulare County

17  case, and he did in fact consider doing so at sentencing.  As to the Fresno case, pursuant to Cal.

18  Penal Code § 669, Judge Broadman, as the last sentencing judge, was required to determine whether

19  the sentence he imposed in Tulare would run consecutively or concurrently to the Fresno sentence.

20  However, he did not have the authority to resentence Petitioner in his Fresno case as the Fresno case

21  was a completely separate case and occurred in a different county.  Had Counsel advised Petitioner

22  that Judge Broadman did have this power, this advice would be legally incorrect and could

23  potentially constitute ineffectiveness of counsel, see Hill v. Lockhart, 474 U.S. 52, 62 (1985) ("The

24  failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the

25  *Strickland* analysis adopted by the majority, as such an omission cannot be said to fall within "the

26  wide range of professionally competent assistance" demanded by the Sixth Amendment.), and this

27  ineffectiveness would be prejudicial if Petitioner is to be believed that it was this specific

28  representation by counsel that he relied upon to plea.  Nevertheless, the Court does not find

Petitioner's contentions credible.  It seems clear from the evidence that if such representation was made, it did not occur at the time of the plea bargaining process.  Apart from Petitioner's own assertion that he relied on this specific representation by counsel during the course of the plea bargaining, all other evidence undermines and contradicts this assertion.  In addition, the Court does not find that Petitioner would have insisted on going to trial if not for Counsel's alleged misrepresentation.

When Petitioner entered into the plea bargain in his Tulare case on April 15, 1997, the Fresno trial had not yet occurred.  In fact, it was not until July 28, 1998, that Petitioner was convicted in the Fresno case, and it was not until then that the special allegations that he had suffered prior serious or violent felony convictions were found to be true. (See Resp't's Ex. K.)  Given the fact that Petitioner had not been convicted in Fresno County, and that two prior convictions had not been found true at the time of the Tulare plea agreement, it is extremely difficult to believe that the Tulare plea agreement was founded on a promise that Petitioner's two Fresno priors could/would be stricken.  In fact, Petitioner admitted he did not know what would happen with his Fresno case at the time he entered his plea in Tulare. (HT 565-567.)

In addition, Petitioner wrote to Judge Broadman two years after the plea on April 15, 1999, wherein Petitioner referenced the plea agreement he had entered into with the court.  Petitioner did not refer the judge to any promise made whereby the judge could/would strike priors in his Fresno case.  Rather, Petitioner specifically stated: "It was at this confrence [sic] your Honor left open the possibility that the court would consider the striking of one or both priors should a plea agreement be arranged between the agencies mentioned." (See Resp't's Ex. L.)  The only logical inference to be made from this is that Petitioner was referring to the two priors he was facing in the Tulare case.  When challenged at the hearing as to why he failed to include in his letter the judge's alleged promise to strike priors in the Fresno case, tellingly Petitioner had no response. (HT 580.)

Further and equally important, the first reference having to do with Judge Broadman's ability to strike Fresno priors is found in Counsel's notes of his discussion with Petitioner on April 1, 1999. (See Pet'r's Ex. 6.)  Listed as item one, Counsel's notes reveal that Petitioner asked him whether the last judge could resentence in a three strikes case. (Id.)  Clearly, this note leads to the logical

inference that it was not until then, two years after the plea bargain was entered into, that Petitioner devised the idea that perhaps Judge Broadman, in exercising his authority to strike priors, could also affect his Fresno sentence.  The note also tends to indicate that Counsel did not know the answer to Petitioner's question at that time.  It may be that Counsel did later misadvise him that Judge Broadman had this authority; however, this is irrelevant since the plea bargain had already occurred two years prior.  Therefore, Petitioner could not have relied on this erroneous representation in deciding to enter his plea in the Tulare County case.

Also, Counsel did not recall the subject of the Fresno priors occurring in any of the discussions with the judge.  Counsel's first recollection of the subject was when Petitioner questioned  him on April 1, 1999.  While it is true that Counsel's testimony at the hearing can be viewed as self-serving, all of Counsel's notes corroborate his testimony.  Simply put, Counsel did not have a motivation to conceal any discussions concerning the Fresno priors at that time. Counsel's pre-plea notes, his notes regarding Petitioner's cooperation with law enforcement, and his contemporaneous note to the plea agreement do not mention the Fresno priors.  (See Resp't's Exs. E at 211-228, F, G at 273-74.)  And even though Counsel did make a request at sentencing for Judge Broadman to affect the Fresno case, this was done two years after the plea agreement had concluded. At the hearing before this Court, Counsel did not recall why he did this, but he posited that he could have done it to preserve the record.  Petitioner argues Counsel was merely attempting to rationalize his ineffectiveness; however, it is equally likely that Counsel did so in order to satisfy Petitioner's request made at the April 1, 1999, meeting.  In either case, this is speculation.  From the evidence, the Court finds it apparent that any discussion concerning the ability to strike the Fresno priors was brought forth at the earliest on April 1, 1999.

Finally, in all of Petitioner's prior habeas petitions, Petitioner never mentions such a promise. In the instant habeas petition before this Court, Petitioner summarized the plea agreement multiple times but never mentions a discussion regarding Judge Broadman's ability to strike priors in the Fresno case.  When asked why at the hearing, Petitioner stated: "Like I said, I'm a layman at law so I don't if - - why I didn't put that in." (HT 622.)  In his summary of Counsel's alleged ineffectiveness, Petitioner did not mention anything about Counsel's alleged erroneous advice and promise regarding

1   the Fresno priors.  If Counsel's assurance was *the only* reason Petitioner entered his plea, as he

2   maintained at the evidentiary hearing, why did he fail to mention this in any of the state appellate and

3   habeas pleadings, including the instant federal petition?  Why did he not bring forth such an

4   important allegation until now? The only logical conclusion is simply because it did not occur at or

5   during the plea bargaining process.

6          In his claim of ineffective assistance of counsel before the Tulare County Superior Court,

7   Petitioner discusses the plea bargain as involving only "the striking of 1 or both priors as being the

8   incentive." (See Resp't's Answer Ex. F.)  Later, Petitioner again refers to the striking of "one or both

9   priors in exchange for his cooperation." (Id.)  Again, clearly the plea bargain entailed only the Tulare

10   County case and the two priors charged in that case.  (RT 474.[8])

11          Accordingly, this Court does not find Petitioner's claim, that he relied on Counsel's

12   advisement at plea bargaining that Judge Broadman had the authority to strike priors in his Fresno

13   case, to be credible.  At best, Counsel may have rendered such erroneous advice at sentencing, but

14   this is not relevant to the plea bargain.  In addition, in light of the overwhelming evidence of

15   Petitioner's guilt and the fact that his plea agreement still presented the chance that he would not

16   face a life sentence out of Tulare County, Petitioner has not demonstrated that he would have

17   insisted on going to trial if not for Counsel's claimed representation.  Therefore, Petitioner has not

18   demonstrated that Counsel was ineffective nor that Petitioner suffered prejudice, to wit, that but for

19   Counsel's erroneous advice, he would not have pleaded guilty and insisted instead on going to trial.

20   Therefore, the claim must be denied.

21          ***2. Subclaim Two - Ineffective Assistance in Fulfillment of Plea Bargain***

22          Petitioner next claims defense counsel rendered ineffective assistance by failing to assist

23   Petitioner during the two years after entry of plea and prior to sentencing. Petitioner maintains that

24   Counsel remained incommunicado during this period of time, when Counsel should have been

25   contacting law enforcement agents and facilitating debriefings wherein Petitioner could provide

26   useful information so as to fulfill the terms of his plea agreement. The Court finds defense counsel

27   _____

28          [8]During the change of plea hearing, when the trial court asked Petitioner how many priors he had, Petitioner
responded "I have two."

did render ineffective assistance during this time; however, the ineffective assistance was not prejudicial.

### a. Analysis of Claim

Following the entry of plea, it appears that Counsel essentially abandoned Petitioner. As noted by Petitioner, it is undisputed that Counsel waited several months after the plea until he made some effort to contact law enforcement about setting up a debriefing. In that time, agent Ron Eowan, who Counsel and Petitioner had spoken to prior to plea and who also had shown interest in Petitioner's information, had been transferred and that any interest by his agency in said information had apparently waned. Petitioner argues that Counsel's undue delay of several months caused his information to become old and stale. Respondent offers various other reasons why the information was no longer useful, such as law enforcement finding the testimony of Michael Carabello to be preferable to Petitioner's. All of these reasons are speculative. It is undisputed that multiple law enforcement agencies were very interested in Petitioner's information at the time of plea, and it is undisputed that Petitioner's evidence was not useful three or four months later when Counsel attempted to contact agent Eowan and two years later when Petitioner was ultimately debriefed. At the hearing of this matter, it could not be determined exactly why the information was useless when it was evaluated. Since Petitioner has not established by clear evidence that his information was in fact useful at the time of plea, and that only Counsel's delay could be blamed for his information becoming useless, the Court must defer to the state court findings. In this regard the state court found that the information was not useful because it was old and stale, not because it was three or four months old, but because it dated back to 1995 when Petitioner was out of custody. In any case, Counsel should have acted diligently by contacting these agencies soon after the plea. Counsel owed a duty to Petitioner to act diligently in assisting in the fulfillment of the plea agreement, which he did not. United States v. Leonti, 325 F.3d 1111, 1119 (9th Cir.2003).

Additionally, apart from several inquiries made to Petitioner's Fresno attorney and the federal prosecutor in Fresno in the months of July or August of 1997, which had negative results, it appears Counsel did not take any other action on behalf of Petitioner. Counsel admitted he never communicated with Petitioner during those two years, not until after Petitioner was returned to

1  Tulare County.  He also admitted he never attempted to facilitate a debriefing after that time.

2  Counsel's only reason for his inaction on Petitioner's behalf was that "[i]t may have had to do with

3  the fact that Fuentez was not in Tulare County anymore." (HT 324.)  However, Counsel's duties do

4  not cease merely because Petitioner was moved to another county.

5        It is axiomatic that an attorney must keep his client informed on all important developments

6  during the course of a criminal prosecution. Strickland, 466 U.S. at 688.  Petitioner correctly notes

7  California's Business and Professions Code § 6068(m) states that "[i]t is the duty of an attorney . . .

8  to keep clients reasonably informed of significant developments." As well, California's Rules of

9  Professional Conduct § 3-500 provides:

10       A member shall keep a client reasonably informed about significant developments relating to
         the employment or representation, including promptly complying with reasonable requests
11       for information and copies of significant documents when necessary to keep the client so
         informed.
12
   Failure to keep a client informed constitutes ineffective assistance. Leonti, 325 F.3d at 1117.
13
         In the context of a plea agreement where a defendant agrees to cooperate with law
14
   enforcement, the Ninth Circuit has held that
15
         an attorney's assistance is critical to the cooperation process in a number of respects,
16       including, but not limited to, facilitating communication between the defendant and the
         government, attending proffer sessions, ascertaining the government's expectations and
17       whether the defendant is satisfying them, communicating the client's limitations to the
         government, and establishing a record of attempts to cooperate.
18
   Id. at 1119.
19
         As discussed above, Counsel provided little, if any, assistance which he was obliged to do.
20
   Not only did he fail to keep in contact with Petitioner regarding the negative developments in
21
   facilitating Petitioner's cooperation with law enforcement, Counsel failed to facilitate any
22
   communication with the relevant law enforcement agencies beyond that mentioned above.  He
23
   likewise failed to attend any proffer sessions which he would have known about if he had kept in
24
   contact with his client, and he failed to ascertain the various law enforcement agencies' expectations
25
   and whether Petitioner was satisfying them.  Therefore, during the two years following the plea,
26
   counsel's performance was deficient and constituted ineffective assistance.
27
         Nevertheless, Petitioner must still demonstrate prejudice, that is, but for Counsel's ineffective
28

1   assistance, there is a reasonable probability that the outcome would have been different. <u>Strickland</u>,

2   466 U.S. at 694.  In this case, he cannot.

3        First, the Court finds that Petitioner could not have fulfilled his side of the plea agreement

4   even if counsel had rendered effective assistance.  Though the exact details of the plea agreement

5   could not be determined at the evidentiary hearing, clearly Petitioner needed to voluntarily cooperate

6   with law enforcement.  Importantly however, mere cooperation was not all that was required.  In this

7   regard, the Court must defer to the findings of the state court, to wit, that the information provided

8   also needed to be "useful." 28 U.S.C. § 2254(e)(1).  Unfortunately for Petitioner, the information

9   was not useful.  Petitioner argues the information became useless because Counsel waited four

10  months after entry of plea to contact the relevant agencies.  However, Petitioner did not establish as

11  fact that this was why the information was useless four months later.  Petitioner's speculation by

12  itself does not overcome the presumed correctness of the state court determination that the

13  information was not useful because it dated back to 1995 when Petitioner was not in custody.

14       Second, and more importantly, the plea bargain hinged not only on Petitioner's cooperation

15  with law enforcement and whether it was useful or not; the record demonstrates that Petitioner

16  needed to show that he had "turn[ed] his life around", "went in a new direction," and "[made] a

17  clean breast of things." (SRT 3; HT 57-59, 83-86, 226, 421-422.)  Petitioner clearly did not do so.

18       Midway through the two years when he was required to be turning his life around,

19  cooperating with law enforcement, and showing he was a changed man heading in a new direction,

20  Petitioner committed a felony by escaping from custody.[9]  He was pursued by deputies across a

21  courthouse lawn, shots were fired, and Petitioner was ultimately captured.  This certainly does not

22  evince cooperation with law enforcement or turning one's life away from crime.  This information

23  was contained in the probation report and was before Judge Broadman at sentencing.[10]

24       California trial courts have limited discretion to dismiss prior convictions in three strikes

---

[9] As previously set forth in the statement of facts, Petitioner was convicted on February 22, 1999, of felony escape in violation of Cal. Penal Code § 4532(b)(1) and given a three year concurrent sentence.  (<u>See</u> Resp't's Ex. K at 296.)

[10] (<u>See</u> Resp't's Ex. K at 301, lns. 17-20) ("The defendant now requests leniency from the Court, indicating that he has turned his life around. However, it should be noted that the defendant absconded from bail and escaped from custody in an attempt to avoid prosecution. The defendant's escape was as recent as February of this year.)

1   cases pursuant to Cal. Penal Code § 1385. <u>People v. Superior Court (Romero)</u>, 13 Cal.4th 497, 529-

2   30 (1996). As Respondent correctly notes, when a sentencing court considers whether to exercise

3   discretion to strike a prior, "preponderant weight must be accorded to factors intrinsic to the scheme,

4   such as the nature and circumstances of the defendant's present felonies and prior serious and/or

5   violent felony convictions, and the particulars of his background, character, and prospects.

6   [Citation.]" <u>People v. Williams</u>, 17 Cal.4th 148, 161 (1998). The court "must consider whether, in

7   light of the nature and circumstances of his present felonies and prior serious and or/violent felony

8   convictions, and the particulars of his background, character, and prospects, the defendant may be

9   deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had

10  not previously been convicted of one or more serious and/or violent felonies." <u>Id</u>. "Because the

11  circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside

12  the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long

13  and continuous criminal record, the continuation of which the law was meant to attack' [citation],

14  the circumstances where no reasonable people could disagree that the criminal falls outside the spirit

15  of the three strikes scheme must be even more extraordinary." <u>People v. Carmony</u>, 33 Cal.4th 367,

16  378 (2004).

17      Given Petitioner's extensive and continuous criminal history which included a felony escape

18  during a time he was required to be demonstrating a changed character, it would have been

19  extremely difficult for Judge Broadman to justify striking any of Petitioner's prior convictions.

20  Petitioner fell squarely within the spirit of the three strikes law.  He spent many years in a violent

21  gang assisting in its criminal activities; he had sustained multiple felony convictions; at a young age,

22  he committed an armed robbery and served time in state prison until he was paroled in 1991; shortly

23  thereafter, he violated his parole and was returned to custody in 1993; two years later in 1995 he

24  committed a carjacking with the use of a firearm; and, while in custody on the 1995 offenses, he

25  attempted a violent escape. (<u>See</u> Resp't's Ex. K.)  Given Petitioner's violent and continuous criminal

26  past, even if he had provided valuable, useful information to law enforcement, there is no question

27  the sentencing court would have found it nearly impossible to find Petitioner "outside the spirit of

28  the three strikes scheme" worthy of an exercise of its discretion to strike prior convictions.

1   <u>Carmony</u>, 33 Cal.4[th] at 378.  Therefore, there is no reasonable probability that, but for counsel's

2   ineffectiveness, the outcome in this case would have been any different.  Since Petitioner cannot

3   demonstrate counsel's ineffectiveness to be prejudicial, the claim must be denied.

4              ***3.  Subclaim Three - Ineffective Assistance during Sentencing***

5          Petitioner next claims that defense counsel rendered ineffective assistance by failing to

6   prepare for and conduct the sentencing hearing.  Specifically, Petitioner faults counsel for failing to

7   secure and review the tape recording of the debriefing in advance of the sentencing hearing, for

8   calling a damaging witness, and for failing to secure the appropriate witnesses.  The Court finds

9   defense counsel did render ineffective assistance during this time period as well, but again, counsel's

10  actions were not prejudicial.

11                  ***a.  Analysis of Claim***

12         Sentencing in the Tulare County case was set for April 19, 1999.  Petitioner was returned to

13  Tulare County in March of 1999.  Counsel received a telephone call on March 19, 1999, from

14  Petitioner advising him that Petitioner was in custody in Tulare County and requesting that Counsel

15  visit him.  (Pet'r's Ex. 1, 3/19 entry.)  Despite his abandonment of Petitioner during the two year

16  period mentioned above, Counsel also waited almost two weeks before visiting Petitioner on March

17  31, 1999.  Counsel was informed at that meeting that Petitioner had been recently debriefed, and the

18  debriefing spanned approximately 3 to 4 hours.  Petitioner also informed Counsel that he had

19  provided information on prison gangs and crimes to Officer Aguirre approximately 30 to 40 times

20  over the past year.  It could not be determined when Counsel learned that the 3 to 4 hour debriefing

21  had been tape-recorded but Counsel knew of the fact at least by April 13, the date the subpoena

22  duces tecum was issued.

23         Counsel subpoenaed the tape for the actual date of the hearing.  He did not seek to secure it in

24  advance of the hearing.  At the hearing, he conceded his action in requesting the tape for the date of

25  the hearing would have made it impossible for him to review it prior to the sentencing hearing. The

26  tape contained information which Counsel could use to argue Petitioner's voluntary cooperation with

27  law enforcement.  By failing to review it prior to the hearing, Counsel could not know the extent of

28  Petitioner's debriefing or the specifics of the information divulged.  He could not make a first-hand

1    assessment of which agents would provide the most useful testimony and therefore was forced to

2    rely on his investigator's notes.  In addition, he could not effectively cross-examine any of the agents

3    with respect to the information provided or its value.  Counsel thus went into the sentencing hearing

4    unready, and in fact admitted, "I was not completely prepared on that issue." (HT 30.)

5        Counsel called Officer Roman to testify regarding Petitioner's cooperation with law

6    enforcement.  Based on the investigator's report, Counsel knew Roman would testify that

7    Petitioner's information was stale and not useful.  Counsel reasoned that although Roman would

8    testify in this manner, he could at least argue that Petitioner had made a good faith effort to

9    cooperate.  The Court finds that Counsel's decision was not unreasonable.  The investigator's notes

10   revealed that Roman had led the debriefing and was the individual to whom Petitioner's information

11   most pertained. Also, the notes showed that the other agents had little or nothing to offer regarding

12   the usefulness of the information.  However, Counsel knew that Petitioner had also provided

13   information to Officer Aguirre on approximately 30 to 40 occasions over the previous year, and yet

14   he failed to elicit that information.  (HT 364-381.)  That evidence could have demonstrated that

15   Petitioner's cooperation extended over a longer period of time.  In addition, Counsel could have used

16   this evidence to argue that Petitioner's cooperation was continuous and useful.  At the evidentiary

17   hearing, Counsel could not provide a reason for his failure to elicit this information.  By failing to

18   elicit the information, Counsel was ineffective.

19       On the morning of the hearing, Counsel also discovered the actual name of another agent

20   involved in the debriefing, Lt. Greg Andreotti.  Previously, Petitioner had informed Counsel at their

21   April 1, 1999, meeting that there was a "Greg" from the M.A.G.E.C. Unit at the debriefing to whom

22   he had provided information, but Counsel failed to investigate the identity of this individual.  As

23   Petitioner points out, a phone call to the M.A.G.E.C. Unit likely would have revealed his identity.

24   Counsel orally requested a continuance at the sentencing hearing in order to secure Andreotti as a

25   witness, but the request was denied.  At the current evidentiary hearing, Andreotti stated he would

26   have testified at the sentencing hearing that Petitioner appeared very willing to provide information.

27   (HT 164-65.)  He further stated that Petitioner's information appeared to be specific, self-

28   incriminating, and new to him at the time.  (HT 169-70.)  He opined that Petitioner appeared to be

1   attempting to debrief and drop out of his gang. (HT 173-74.)  Although he could not testify that any

2   of the information was helpful to law enforcement (HT 188-189), at the very least, Counsel could

3   have utilized this witness to further demonstrate Petitioner's willful cooperation with law

4   enforcement, which Counsel admitted was the only viable argument he could make.  Counsel's

5   failure to ascertain this individual ahead of time was not reasonable.

6          In sum, Counsel did not render effective assistance in preparing for and conducting the

7   sentencing hearing.  Under the circumstances, counsel's representation fell below an objective

8   standard of reasonableness.  Nevertheless, for the same reasons discussed in the second subclaim,

9   Petitioner cannot demonstrate prejudice resulting from Counsel's ineffectiveness.

10         As previously discussed, the Court must presume that the plea bargain required that

11  Petitioner's information be useful; it was not.  Petitioner did not establish that it was Counsel's fault

12  the information was not useful.  Therefore, he cannot establish that but for Counsel's ineffectiveness,

13  he would have fulfilled a term of his plea bargain by voluntarily providing information that was

14  useful to law enforcement.  In addition, the plea bargain involved more than just Petitioner providing

15  useful information to law enforcement.  Petitioner needed to demonstrate to Judge Broadman that he

16  had turned his life around and changed his criminal behavior.  It was nearly, if not totally, impossible

17  for Petitioner to make this showing given his felony escape during the time that Judge Broadman

18  expected him to be conducting himself lawfully and cooperating with law enforcement.  Given

19  Petitioner's extensive and continuous criminal behavior and his lengthy active participation in his

20  violent gang, there is no question that despite whatever information Petitioner could have provided

21  and however useful it may have been, he could not fulfill the terms of his plea bargain based upon

22  his escape from custody during the two year period he was in Fresno County.  Therefore, even

23  though Counsel did render ineffective assistance, it was not prejudicial.

24  **IV.  Certificate of Appealability**

25         A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

26  district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-

27  El v. Cockrell, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue

28  a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

1      (a) In a habeas corpus proceeding or a proceeding under section 2255 before a
       district judge, the final order shall be subject to review, on appeal, by the court
2      of appeals for the circuit in which the proceeding is held.

3      (b) There shall be no right of appeal from a final order in a proceeding to test the
       validity of a warrant to remove to another district or place for commitment or trial
4      a person charged with a criminal offense against the United States, or to test the
       validity of such person's detention pending removal proceedings.

5
       (c)      (1) Unless a circuit justice or judge issues a certificate of appealability, an
6               appeal may not be taken to the court of appeals from–

7                    (A) the final order in a habeas corpus proceeding in which the
                     detention complained of arises out of process issued by a State
8                    court; or

9                    (B) the final order in a proceeding under section 2255.

10              (2) A certificate of appealability may issue under paragraph (1) only if the
                applicant has made a substantial showing of the denial of a constitutional right.
11
                (3) The certificate of appealability under paragraph (1) shall indicate which
12              specific issue or issues satisfy the showing required by paragraph (2).

13     If a court denies a petitioner's petition, the court may only issue a certificate of appealability

14     "if jurists of reason could disagree with the district court's resolution of his constitutional claims or

15     that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

16     further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the

17     petitioner is not required to prove the merits of his case, he must demonstrate "something more than

18     the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at

19     338.

20     In the present case, the Court finds that reasonable jurists would not find the Court's

21     determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or

22     deserving of encouragement to proceed further.  Petitioner has not made the required substantial

23     showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a

24     certificate of appealability.

25     ///

26     ///

27     ///

28     ///

1    ///

2    ///

3

4                                    **ORDER**

5          Accordingly, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus is

6    DENIED with prejudice.  The Clerk of the Court is DIRECTED to enter judgment for Respondent.

7    The Court DECLINES to issue a certificate of appealability.

8

9          IT IS SO ORDERED.

10   **Dated:     October 1, 2010                            /s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28